The STATE of Ohio, Appellee,

v.

WILSON, Appellant.

[Cite as *State v. Wilson* (1996), 117 Ohio App.3d 290.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–960096.

Decided Dec. 24, 1996.

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Philip R. Cummings*, Assistant Prosecuting Attorney, for appellee.

*Raul E. Tellez*, for appellant.

PAINTER, Judge.

The night of October 23, 1995, two black males robbed James Overpeck, the attendant of a Swifty Service Station. Overpeck stated that the men were driving a light blue Cadillac with a plastic sheet covering the "busted-out" rear window. After Overpeck filled the car with gas, the driver pointed a gun at him and demanded his money. After the Cadillac left, Overpeck called the police, giving a description of the car, the license plate number, and a description of the driver and passenger, including the clothes that they were wearing.

Running the plate number through the computer, the police determined that the owner of the Cadillac resided at Mulberry Court, an apartment complex. At the complex, the police observed a light blue Cadillac pull in within five to ten minutes of the robbery. Appellant, Kevin Wilson, was driving the vehicle. He was apprehended, but the passenger, Richard Mansfield, fled, only to be arrested later. The police brought Overpeck to Mulberry Court to identify the vehicle and Wilson. Wilson remained in the back of the police cruiser while Overpeck tried to identify him. At first, Overpeck could not identify Wilson as the perpetrator, but after a police officer shined a flashlight on Wilson, Overpeck made the identification.

After arresting Wilson, Officer Greg Phillips questioned him about his involvement in the crime and taped the conversation. At the station, Wilson stated that

he wanted to call a lawyer and asked that he be allowed to call his grandmother because she had an attorney, whom he apparently planned to use. While speaking to his grandmother, Wilson said to Phillips, "See, my Grandmother sayin' I was in the house, man. I told you I didn't do nothin'." At that point, Phillips resumed the interrogation. Wilson denied involvement in the robbery. Phillips stated to Wilson:

"LT. PHILIPS [*sic* ]: Okay. You understand there's a big difference between aggravated armed robbery and theft?

"MR. WILSON: Yeah.

"LT. PHILIPS [*sic* ]: You understand that? If you tell me what happened I can assure you it's going to be a theft offense. If you don't tell me I'm going to let it go as an aggravated armed robbery, you understand that?"

Wilson eventually confessed to his involvement in the robbery. He was indicted on one count of aggravated robbery, R.C. 2911.01(A)(1), and one count of robbery, R.C. 2911.02(A). The trial court denied Wilson's motions to suppress both his confession and Overpeck's identification of Wilson at the apartment complex. A jury found Wilson guilty on both counts. The trial court sentenced Wilson to ten to twenty-five years of incarceration for aggravated robbery.

Wilson brings four assignments of errors. In his first assignment, Wilson asserts that the trial court erred by overruling his motion to suppress his confession. We find this assignment of error to be well taken.

At the police station, Wilson gave a statement, which was taped, implicating himself in the robbery. However, Wilson argues that the statement was induced by promises from Officer Phillips, and therefore that his confession was involuntary. We agree.

A suspect's waiver of his right not to incriminate himself, and his subsequent confession, must be made voluntarily, knowingly, and intelligently. *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. "A suspect's decision to waive his Fifth Amendment privilege is made voluntarily absent evidence that his will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct. Thus, coercive police activity is a necessary predicate to finding that a confession is not voluntary within the Fifth Amendment, on which *Miranda* was based." (Citations omitted.) *State v. Dailey* (1990), 53 Ohio St.3d 88, 91–92, 559 N.E.2d 459, 463; see, also, *State v. Hill* (1992), 64 Ohio St.3d 313, 595 N.E.2d 884, certiorari denied (1993), 507 U.S. 1007, 113 S.Ct. 1651, 123 L.Ed.2d 272. The prosecutor has the burden to prove by a preponderance of the evidence that the statements of the accused were voluntary. *Lego v. Twomey* (1972), 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618; *State v. Melchior* (1978), 56 Ohio St.2d 15, 10 O.O.3d 8, 381

N.E.2d 195. To determine voluntariness, the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the defendant; the length, intensity, and frequency of the interrogation; and the existence of physical deprivation or mistreatment, or the existence of any threat or inducement. *State v. Brewer* (1990), 48 Ohio St.3d 50, 549 N.E.2d 491, certiorari denied (1995), 516 U.S. 830, 116 S.Ct. 101, 133 L.Ed.2d 55; *State v. Edwards* (1976), 49 Ohio St.2d 31, 3 O.O.3d 18, 358 N.E.2d 1051, paragraph two of the syllabus, vacated as to death penalty (1978), 438 U.S. 911, 98 S.Ct. 3147, 57 L.Ed.2d 1155.

▪ Clearly, a suggestion of leniency by the police is not enough to invalidate a confession, but would merely be a factor bearing on whether the confession was voluntary. *State v. Cooey* (1989), 46 Ohio St.3d 20, 544 N.E.2d 895. Admonitions to tell the truth made by police officers are considered neither threats nor promises, and are permissible. *Id.; State v. Wiles* (1991), 59 Ohio St.3d 71, 571 N.E.2d 97, certiorari denied (1992), 506 U.S. 832, 113 S.Ct. 99, 121 L.Ed.2d 59. Promises that a defendant's cooperation will be considered in disposition of the case, or that a confession will be helpful, do not invalidate an otherwise legal confession. *State v. Loza* (1994), 71 Ohio St.3d 61, 641 N.E.2d 1082, certiorari denied (1995), 514 U.S. 1120, 115 S.Ct. 1983, 131 L.Ed.2d 871. In *State v. Chase* (1978), 55 Ohio St.2d 237, 9 O.O.3d 180, 378 N.E.2d 1064, the majority determined that a confession was voluntary even though the police offered "help" to the accused if he confessed.

▪ However, in the case *sub judice,* the officer stepped over the line because of the certainty of the promise and its obvious appeal, which provided an inducement of such magnitude that it could have readily overborne Wilson's will. "The line to be drawn between permissible police conduct and conduct deemed to induce or tend to induce an involuntary statement does not depend upon the bare language of inducement but rather upon the nature of the benefit to be derived by a defendant if he speaks the truth, as represented by the police." *State v. Arrington* (1984), 14 Ohio App.3d 111, 115, 14 OBR 125, 129, 470 N.E.2d 211, 216, quoting *People v. Flores* (1983), 144 Cal.App.3d 459, 469, 192 Cal.Rptr. 772, 776–777.

During the interrogation, Phillips clearly promised Wilson that if he confessed, he would be facing only a theft charge, rather than an aggravated robbery charge (obviously a disingenuous statement, as the crime was surely a classic aggravated robbery). Phillips assured Wilson that if he told him what happened, the charge would be a theft offense. Upon his confession, however, Wilson was charged and convicted of aggravated robbery. Regardless of how many times earlier Phillips told Wilson that he needed to know the facts in order to determine whether the crime would be a theft or an aggravated robbery, his clear promise cannot be

tempered by his previous statements. Considering the totality of the circumstances in examining whether Wilson's statement was voluntary, we conclude that the absolute promise by Phillips was so extreme as to render the confession involuntary. Wilson's confession should have been suppressed by the trial court.

Wilson further argues that his confession should have been suppressed because he had invoked his right to counsel, but the police interrogation did not cease. In light of our conclusion that the confession was involuntarily made, this issue is moot.

In his second assignment of error, Wilson asserts that the trial court erred by overruling his motion to suppress Overpeck's identification of Wilson as the perpetrator of the robbery. We find no merit in this argument.

First, in *State v. Madison* (1980), 64 Ohio St.2d 322, 18 O.O.3d 491, 415 N.E.2d 272, the Ohio Supreme Court determined that one-on-one showups near the time of an alleged criminal act do not tend to bring about misidentification, but instead tend, under some circumstances, to ensure accuracy. See, also, *State v. Miller* (1988), 56 Ohio App.3d 130, 565 N.E.2d 840; *State v. Powell* (May 27, 1992), Hamilton App. No. C–910377, unreported, 1992 WL 113339, appeal dismissed (1992), 65 Ohio St.3d 1417, 598 N.E.2d 1169.

■ Even if we assume, *arguendo,* that the one-on-one showup was unnecessarily suggestive, the United States Supreme Court has set forth the factors to consider for determining whether an identification is reliable even though the confrontation procedure was unnecessarily suggestive. *Neil v. Biggers* (1972), 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401. Considered in the totality of the circumstances, these factors include (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation. *Id.;* see, also, *State v. Garner* (1995), 74 Ohio St.3d 49, 656 N.E.2d 623, reconsideration denied (1995), 74 Ohio St.3d 1485, 657 N.E.2d 1378, certiorari denied (1996), 517 U.S. 1147, 116 S.Ct. 1444, 134 L.Ed.2d 564.

■ Applying these factors, we conclude that no substantial likelihood of misidentification of Wilson by Overpeck occurred. Overpeck stood just outside the car door and saw Wilson's face as he pointed the gun at him and demanded the money. When asked at trial whether he got a good look at Wilson's face the night of the crime, Overpeck testified: "That was some time ago. I don't think I could forget it, though." Although Overpeck could not initially identify Wilson, when adequate lighting was provided, Overpeck expressed a high degree of certainty in identifying Wilson as the perpetrator. Moreover, this identification

was made minutes after the crime was committed. Under the facts presented, we determine that Overpeck's identification was reliable under the circumstances and overrule Wilson's second assignment of error.

In Wilson's third assignment of error, he asserts that the trial court erred by failing to grant his Crim.R. 29 motion for acquittal and entering a judgment of guilty, which was based on insufficient evidence and was contrary to the manifest weight of the evidence.

Our granting of a new trial pursuant to our resolution of the first assignment of error renders Wilson's challenge to the weight of the evidence moot. Further, a Crim.R. 29 motion for judgment of acquittal is properly denied where the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt. *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184. Viewing the evidence, including Overpeck's testimony, we determine that the trial court did not err in denying Wilson's Crim.R. 29 motion for acquittal. We overrule Wilson's third assignment of error.

In Wilson's fourth assignment of error, he asserts that the trial court erred by entering a judgment of guilty for aggravated robbery because he was convicted by an all-white jury.[1] Because of our grant of a new trial, we find this assignment of error moot.

In summary, we sustain the first assignment of error, reverse the judgment of the trial court, and remand the case for further proceedings consistent with law and this decision.

*Judgment reversed*
*and cause remanded.*

DOAN, P.J., and GORMAN, J., concur.

---

1. Wilson's counsel brings this assignment of error under *Anders v. California* (1967), 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493, himself believing the issue to be without merit and frivolous.