OPINION
{¶ 1} Defendant-appellant Charles Kelly appeals from his conviction and sentence for Possession of Cocaine, in an amount less than five grams. He contends that his trial counsel was ineffective. Kelly particularly contends that his trial counsel was ineffective for having failed to move to suppress the crack pipe containing the cocaine residue used to convict him, which was found in the back of his car, and his admission, to the arresting police officer, that the crack pipe was his. We conclude, from the testimony at the trial, that a motion to suppress, had it been made, would not have had a sufficient chance of success for the failure to have made the motion to have constituted ineffective assistance of counsel. From our review of the record, we further conclude that trial counsel was not ineffective in any other respect.
 {¶ 2} Kelly also argues that his conviction is against the manifest weight of the evidence. Given that a crack pipe containing cocaine residue was found in the back of his car, and that he admitted it was his, we conclude that his conviction is not against the manifest weight of the evidence. Finally, Kelly argues that the cumulative effect of multiple errors occurring at his trial deprived him of a fair trial, but our review of the record reflects only one error — one obvious misstatement in a jury instruction, which, in view of other instructions, was not likely to have misled the jury. The cumulative error doctrine for multiple errors occurring at trial has no application where there is but one error.
 {¶ 3} The judgment of the trial court is Affirmed.
 I {¶ 4} One morning in late March, 2001, Dayton police officer Raymond St. Clair saw Kelly driving on a public street without a front license plate. St. Clair ran a computer registration check, and discovered that an arrest warrant was outstanding for the owner, Kelly. St. Clair stopped Kelly.
 {¶ 5} With Kelly in the car was a woman who was identified in the trial testimony only as "Anna." Kelly produced his driver's license at St. Clair's request, thereby establishing his identity. Because it appeared that there was a warrant outstanding for Kelly's arrest, St. Clair patted him down, placed him in the back seat of the cruiser, and then proceeded to verify the existence of an active warrant.
 {¶ 6} Once St. Clair had verified that there was, in fact, an active warrant outstanding for Kelly's arrest, he inventoried Kelly's car. Directly behind the front passenger seat, St. Clair found a plastic shopping bag containing a crack pipe and an unused copper Brillo scrub pad. There was burnt residue inside the pipe, which St. Clair believed, based upon his experience, to be drug residue.
 {¶ 7} Anna told St. Clair that the crack pipe was not hers. When St. Clair went back to the cruiser and informed Kelly that he had found a crack pipe behind the passenger seat, Kelly said it was not his. St. Clair then gave Kelly warnings in accordance with Miranda v. Arizona
(1966), 384 U.S. 436, 86 S.Ct. 1602. After the Miranda warnings were administered, Kelly indicated he was willing to talk to St. Clair, again denied that the crack pipe was his, and asserted that it belonged to Anna.
 {¶ 8} What happened next is worth setting forth in detail, from St. Clair's testimony:
 {¶ 9} "Q. Okay. Did you eventually transport the defendant to the jail?
 {¶ 10} "A. Yes, I did. While I'm inside my patrol car and before transporting him, I have a lot of paperwork to fill out. For example, his traffic citation I had to give him for the front license plate missing. I have a booking screen to fill out on the computer. And that gets sent to the central computer and it comes back to me with a booking number and that way when I get to the sally port, which is a small garage at the county jail, I can print that book sheet up and I sign it stating that Mr. Kelly is under arrest for the above violations which is the warrant for Huber Heights.
 {¶ 11} "So while I'm doing all of this myself and Mr. Kelly and I are making some small talk and one of the things I said to Mr. Kelly was, you know, it really takes a man to go ahead and admit to the fact that he has done something wrong. Mr. Kelly told me, you know, he has a drug problem and I told Mr. Kelly that it is not a problem. Admitted to me he has a drug problem because I'm not going to charge him with a crime of having a drug problem. Because there is no Ohio Revised Code that says I have a drug problem, therefore, I'm going to be convicted of it. You know, I was advising him that, you know, you can get help out there. There are different agencies and that again it really takes a man to go ahead and admit the fact that he has done something wrong and take responsibility for that action. And after I'm done with my paperwork and my computer work, I went ahead and transported Mr. Kelly to the county jail in Montgomery County.
 {¶ 12} "Q. Did he make any other statement to you about that particular crack pipe?
 {¶ 13} "A. Yes. If you are familiar with Stanley, I took Stanley Avenue — Street to Route 4, took Route 4 towards downtown and this is before all the road construction that we are pretty familiar with and I'm in the far left-hand lane merging onto I-75 southbound and there is no talking going on between myself and Mr. Kelly.
 {¶ 14} "I'm not asking him any questions. We are not talking about anything. And he simply utters I'm going to admit it and be a man. I will take responsibility. That was my crack pipe. At that time I asked Mr. Kelly, sir, if I have the crack pipe tested, is there going to be residue crack cocaine in the inside of the pipe, and he stated yes.
 {¶ 15} "Q. Any other talk about the crack pipe at all?
 {¶ 16} "A. No, sir."
 {¶ 17} Kelly testified at trial. He denied ever having admitted to St. Clair that the crack pipe was his. Kelly could not recall having told St. Clair that he had a drug problem, and that he needed treatment. Kelly did remember St. Clair having "said something like," "it takes a man to admit he is wrong."
 {¶ 18} Kelly was charged with Possession of Cocaine, in an amount less than 5 grams. Following a jury trial, he was convicted as charged, and sentenced accordingly. From his conviction and sentence, Kelly appeals.
 II {¶ 19} Kelly's First Assignment of Error is as follows:
 {¶ 20} "APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL."
 {¶ 21} Both parties agree that to prevail on a claim of ineffective assistance of counsel, a criminal defendant must demonstrate a reasonable probability that, but for his counsel's deficient performance, the result of his trial would have been different. Stricklandv. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052; State v. Bradley
(1989), 42 Ohio St.3d 136, certiorari denied (1990), 497 U.S. 1011; Statev. Lascola (1988), 61 Ohio App.3d 228. With that standard in mind, we turn to Kelly's specific contentions.
 A. The failure to move to suppress the confession. {¶ 22} Kelly cites State v. Payton (1997), 119 Ohio App.3d 694,704; State v. Garrett (1991), 76 Ohio App.3d 57, 63, and one unreported case for the proposition that trial counsel's failure to file a motion to suppress may constitute ineffective assistance of counsel, warranting reversal, where reasonable grounds for filing a motion to suppress existed. Using this standard, we conclude that the record fails to demonstrate that reasonable grounds existed for filing a motion to suppress Kelly's admission that the crack pipe was his.
 {¶ 23} St. Clair testified that after he had advised Kelly of his rights under Miranda v. Arizona, supra, he asked Kelly whether, now that he understood his rights, he was willing to answer any questions without a lawyer, and obtained Kelly's affirmative response. Kelly, who testified in his own defense, did not dispute this assertion. We conclude, therefore, that when Kelly allegedly made his admission, he had been advised of his Miranda rights, had been asked if he was willing to answer questions without a lawyer present, and agreed to do so.
 {¶ 24} As Kelly points out, a confession made after Miranda warnings have been administered may, nevertheless, be inadmissible if the confession is not made voluntarily, knowingly and intelligently. Statev. Wilson (1996), 117 Ohio App.3d 290. The issue is whether a defendant's will has been overborne by the circumstances surrounding the giving of the confession. State v. Petitjean (2000), 140 Ohio App.3d 517.
 {¶ 25} A police officer's admonition to a suspect to tell the truth is not coercive in nature. State v. Wiles (1991), 59 Ohio St.3d 71,81, 571 N.E.2d 97; and State v. Cooey (1989), 46 Ohio St.3d 20, 28,544 N.E.2d 895, 908. But promises of leniency by the police, such as probation upon conviction, are improper and render an ensuing confession involuntary. State v. Arrington (1984), 14 Ohio App.3d 111. InArrington, supra, the interrogating police officer made express promises that charges of Grand Theft, Aggravated Robbery, and Attempted Aggravated Burglary would be dismissed if the suspect in an Attempted Aggravated Murder investigation cooperated. Perhaps more importantly, the suspect was told that if he wasn't "the one who pulled the trigger," he could get probation. These representations were deemed to have rendered the incriminating statements resulting therefrom involuntary. Similarly, inState v. Petitjean, supra, a Murder suspect was told that if he admitted having killed the victim, he would probably get two years' probation. We held that this possibility "was so remote from reality as to be illusory." We concluded that this express misrepresentation of the advantages to the suspect of admitting guilt rendered the confession involuntary.
 {¶ 26} Kelly argues that his case is similar to Petitjean andArrington, because he was implicitly promised that he would not be prosecuted if he admitted that the crack pipe was his. However, as the State notes, in his testimony Kelly did not indicate that he inferred, from St. Clair's remarks, that he would not be prosecuted if he admitted that the crack pipe was his. Kelly's testimony is consistent with the State's position that St. Clair was merely admonishing him to acknowledge his drug problem, and get help for it. That Kelly's admission that he had a drug problem, and his admission that the crack pipe found in his car belonged to him, are two distinct things is evident from the fact that Kelly acknowledged, at trial, that he had a drug problem, but denied that the crack pipe belonged to him.
 {¶ 27} As the State notes, four to five minutes elapsed between St. Clair's admonition to Kelly to admit his drug problem and get help for it, and Kelly's admission that the crack pipe was his, during which "there was no talking going on." It is Kelly's burden to demonstrate that a motion to suppress his confession, had it been made, would have had a reasonable probability of success. On this record, we conclude that he has failed to meet that burden. We conclude that the evidence adduced at trial falls far short of demonstrating that Kelly's will was overborne by St. Clair to such an extent that his admission that the crack pipe belonged to him was involuntary, and therefore inadmissible.
 B. The failure to move to suppress the crack pipe. {¶ 28} Kelly argues that the record demonstrates that the State did not, and could not, establish that the search leading to the discovery of the crack pipe was within the inventory search exception to the requirement of a search warrant based upon probable cause. As the State points out, this argument is moot in view of the recent decision inState v. Murrell, 94 Ohio St.3d 489, 2002-Ohio-1483, in which the Ohio Supreme Court has held that police are authorized to search a vehicle incident to the arrest of the driver. St. Clair testified that he did not search Kelly's vehicle until after he had ascertained that there was, in fact, a warrant outstanding for Kelly's arrest. Accordingly, it is clear that a motion to suppress the crack pipe, had it been made, would have failed.
 C. The failure to request an instruction limiting the purposes for which the jury could consider Kelly's other bad acts. {¶ 29} During the course of St. Clair's testimony, he alluded, from time to time, to Kelly's outstanding arrest warrant. Kelly concedes that the references to this warrant as the foundation for his arrest was appropriate.
 {¶ 30} When Kelly was cross-examined, the State brought out that he had previously been convicted for Theft and Forgery. Again, Kelly concedes that the State could properly use those convictions to impeach his credibility.
 {¶ 31} Kelly contends that the fact that he had been picked up on an outstanding warrant "was emphasized over and over and over again at trial." We have reviewed the trial transcript, and we do not find that the outstanding arrest warrant was unduly emphasized. The nature of the charge to which the arrest warrant pertained was never communicated to the jury.
 {¶ 32} As Kelly notes, there was no limiting instruction given to the jury regarding its consideration either of the pendency of the arrest warrant, or Kelly's prior convictions. Kelly contends that the failure to have requested a limiting instruction constitutes ineffective assistance of trial counsel. We are not persuaded.
 {¶ 33} The essential issue of fact for the jury was whether, as St. Clair testified, Kelly admitted that the crack pipe was his, or whether, as Kelly testified, he made no such admission. During the voir dire of the jury, Kelly's counsel was able to establish, and emphasized, that a police officer's testimony is not intrinsically entitled to any greater weight than the testimony of any other witness. In our view, to have caused the judge to instruct the jury that it could consider the prior convictions only as they related to Kelly's credibility, would only have emphasized that the prior convictions could properly be considered for that purpose, thereby undermining the groundwork counsel had laid, during voir dire, for consideration of Kelly's testimony on a par with the testimony of the police officer. We can understand why defense counsel chose not to request that limiting instruction.
 {¶ 34} We realize that the same analysis does not pertain to the failure to obtain a limiting instruction with respect to Kelly's outstanding arrest warrant. However, in our view, the existence of an outstanding arrest warrant was not unduly emphasized, and we conclude that there is no reasonable probability that the result of this trial would have been otherwise, had Kelly's trial counsel requested, and obtained, a limiting instruction concerning the testimony about the outstanding arrest warrant.
 D. Miscellaneous other claimed failures of trial counsel. {¶ 35} Kelly has submitted additional claims of ineffective assistance of trial counsel, including improper remarks and ineffective questioning during voir dire, the failure to move for a judgment of acquittal at the end of the State's case, the making of a short and confusing closing argument, the failure to object to improper arguments and questioning by the prosecutor, reenforcing damaging testimony, failing to object to non-responsive testimony, and the failure to object to a misleading jury instruction, which is discussed in Part IV, below. We have reviewed the entire transcript of the trial. We are satisfied that Kelly's defense counsel competently represented him. In view of the fact that the crack pipe was found in the back of Kelly's car, and that a police officer with no apparent motive to lie testified that Kelly acknowledged that the crack pipe belonged to him, this was a straightforward case; defense counsel did not have much to work with.
 {¶ 36} Kelly's First Assignment of Error is overruled.
 III {¶ 37} Kelly's Second Assignment of Error is as follows:
 {¶ 38} "THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 39} A crack pipe containing cocaine residue was found in the back seat of Kelly's car. The jury heard credible testimony from police officer St. Clair that Kelly admitted that the crack pipe was his. We are not persuaded that Kelly's conviction is against the manifest weight of the evidence.
 {¶ 40} Kelly's Second Assignment of Error is overruled.
 IV {¶ 41} Kelly's Third Assignment of Error is as follows:
 {¶ 42} "THE CUMULATIVE EFFECT OF THE ERRORS OCCURRING AT TRIAL DEPRIVED APPELLANT OF A FAIR TRIAL."
 {¶ 43} The only error that we have found in Kelly's trial is the following sentence in the instructions to the jury:
 {¶ 44} "Consult with one another in the jury room and deliberate with a view to reaching an agreement if you can do so without rendering your individual judgment." This was an obvious misstatement. The trial court went on to give the following standard instructions:
 {¶ 45} "Each of you must decide this case for yourself. You should not do so, however, only after a discussion of the case with the other jurors. Do not hesitate to change an opinion if convinced that it is wrong. However, you should not surrender your opinion considering the weight of the evidence in order to be congenial or to reach a verdict totally because of the opinion of other jurors."
 {¶ 46} In view of the above-quoted passage from the instructions to the jury, we are satisfied that the misstatement preceding it, which was not the subject of an objection, is insubstantial.
 {¶ 47} Multiple errors, no one of which is sufficiently prejudicial to require reversal, may nevertheless, when cumulated, have a prejudicial effect sufficient to require reversal. State v. DeMarco
(1987), 31 Ohio St.3d 191. The application of the cumulative error doctrine requires multiple errors. We have found only the one error, in the giving of the jury instructions. There are, therefore, no multiple errors to cumulate, and Kelly's Third Assignment of Error is overruled.
 V {¶ 48} All of Kelly's assignments of error having been overruled, the judgment of the trial court is Affirmed.
BROGAN and GRADY, JJ., concur.