OPINION
{¶ 1} Defendant-appellant, Stephen Jackson, appeals his convictions in the Butler County Court of Common Pleas for aggravated robbery with a firearm specification and two counts of felonious assault.
 {¶ 2} On July 15, 2001, the Donatos Pizza in West Chester was robbed. The perpetrator was armed with a gun and during the robbery used the weapon to hit two restaurant employees in the head. A police investigation led to appellant, his aunt, Marvella Johnson, and the aunt's boyfriend, Travis Anderson.
 {¶ 3} Police obtained a search warrant for appellant's grandmother's home. Appellant was staying with his grandmother at the time and agreed to talk to police while they conducted the search. Appellant was Mirandized, and denied any involvement in the robbery. He told police that he had been with his friend, Frank Harrison, at the time of the robbery.
 {¶ 4} Anderson was arrested and gave police a statement regarding the details of the robbery. The police discovered that Anderson, who had previously worked at the Donatos, went inside to talk to the employees and let appellant in when the door opened. Appellant robbed the restaurant and hit the employees in the head with a gun. Johnson drove the get-away car.
 {¶ 5} A few days later, appellant was arrested. He was taken to the police station and questioned. Detective Mike Quinn read appellant his Miranda rights, and appellant agreed to talk to the detective, but continued to deny any involvement in the robbery. Sergeant Matt Brillhart also questioned appellant during this time. Both detectives encouraged appellant to tell them the truth. Appellant was told that Anderson and Johnson had given statements and that the police knew appellant was involved. The detectives told appellant if he cooperated they would let the prosecutor know, and the case could possibly stay in juvenile court rather than being bound over to common pleas.
 {¶ 6} The detectives questioned appellant for over two hours, but he continued to deny any involvement. After determining that appellant was not going to cooperate, the officers decided to process appellant and to have him transferred to the Butler County Juvenile Detention Center. Sergeant Brillhart attempted to contact appellant's mother, Antoinette Jackson, to make her aware of her son's arrest and transfer to juvenile detention, and to get some information which was necessary for the paperwork, but was unable to reach her. Ms. Jackson called the officer back a short time later. Sergeant Brillhart explained that appellant had been arrested, and explained the circumstances surrounding the robbery and Johnson and Anderson's involvement. He told Jackson that although they knew appellant was involved and had encouraged him to tell them what happened, appellant continued to deny any involvement. Sergeant Brillhart told Jackson that he had encouraged appellant to cooperate and that he would tell the prosecutor and possibly keep the case in juvenile court if appellant cooperated.
 {¶ 7} Ms. Jackson asked if she could speak with her son. Sergeant Brillhart initially denied the request, but at Jackson's request to have appellant call her, said it might be possible to have appellant call his mother back. Shortly after the phone call, the detectives called Jackson and let appellant speak with his mother. Jackson encouraged her son to cooperate with the police and tell them what he knew. After speaking with his mother, appellant agreed to make a statement to the police detailing his involvement in the robbery.
 {¶ 8} Sergeant Brillhart spoke with the prosecutor and requested that the case stay in juvenile court because of appellant's cooperation. However, he was later informed that the juvenile court judge decided, based on the facts of the case, that appellant should be tried as an adult. The case was bound over to the common pleas court. Appellant filed a motion to suppress the statements he had given to the police. The trial court heard testimony from Detective Quinn and Sergeant Brillhart, and viewed videotapes of appellant's questioning both before and after speaking with his mother. The trial court also listened to tape recordings of the conversations between Sergeant Brillhart and Jackson, and between Jackson and appellant. Based on this evidence, the trial court denied the motion to suppress. Appellant later pled no contest to the charges, and was convicted and sentenced. Appellant now appeals the trial court's denial of his motion to suppress and raises two assignments of error.
Assignment of Error No. 1
 {¶ 9} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT OVERRULED HIS MOTION TO SUPPRESS HIS STATEMENT TO THE POLICE."
Assignment of Error No. 2
 {¶ 10} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT DID NOT TAKE HIS COOPERATION INTO CONSIDERATION WHEN SENTENCING THE DEFENDANT."
 {¶ 11} In his first assignment of error, appellant contends that the statement he gave to police was not voluntarily obtained and should have been suppressed by the trial court. An appellate court may not disturb a trial court's decision on a motion to suppress where it is supported by competent, credible evidence. State v. Retherford (1994),93 Ohio App.3d 586, 592. When considering a motion to suppress, the trial court serves as the trier of fact and is the primary judge of the credibility of witnesses and the weight of the evidence. State v.Fanning (1982), 1 Ohio St.3d 19, 20. Relying on the trial court's findings, the appellate court determines "without deference to the trial court, whether the court has applied the appropriate legal standard."State v. Anderson (1995), 100 Ohio App.3d 688, 691.
 {¶ 12} Appellant argues that the statement was the result of hours of questioning involving threats, promises and misstatements of law. A confession is involuntary and violative of the United States and Ohio Constitutions if it is the product of "coercive police activity." Statev. Loza, 71 Ohio St.3d 61, 66, 1994-Ohio-409, quoting Colorado v.Connelly (1986), 479 U.S. 157, 167, 107 S.Ct. 515. In determining whether a confession was involuntarily induced, the court must consider the totality of the circumstances, including the age, mentality and prior criminal experience of the accused; the length, intensity and frequency of the interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement. Loza at 66.
 {¶ 13} This court has carefully reviewed the transcript of the suppression hearing, has viewed the videotapes of appellant's interrogation, and listened to the recordings of the telephone conversations between Detective Brillhart and Jackson and Jackson and appellant. In the first videotape, taken prior to appellant's conversation with his mother, the police repeatedly told appellant that they knew he was involved in the robbery and that he should tell the truth. The detectives made attempts to get appellant to cooperate by telling him that they would inform the prosecutor of any cooperation and try to keep the case in juvenile court. Alternatively, they informed him that any lack of cooperation would not be in his best interest, and they could recommend appellant be charged as an adult and that he might get the maximum sentence and go to prison for a long time.
 {¶ 14} Admonitions to tell the truth are considered to be neither threats nor promises and are permissible. State v. Wiles (1991),59 Ohio St.3d 71, 81; State v. Wilson (1996), 117 Ohio App.3d 290, 294. Promises that a defendant's cooperation might be considered in the disposition of the case or that a confession would be helpful will not invalidate an otherwise legal confession. Id.; Loza at 67.
 {¶ 15} Appellant argues that the statements made by the police that they would try to keep the case in juvenile court if he cooperated were misstatements of the law. The offense of aggravated robbery with a firearm specification requires a mandatory bind over to the common pleas court. See R.C. 2152.10. However, Detective Quinn testified that he was not aware at the time appellant was being questioned that the charges would require a mandatory transfer to the common pleas court. The detectives told appellant that they would speak to the prosecutor and recommend that the case stay in juvenile court, and they did so. The evidence at the hearing showed that it was the juvenile judge who heard the facts of the case and decided it should not stay in juvenile court. There is no evidence of trickery or deception on the part of the police regarding the statements made to appellant.
 {¶ 16} Despite appellant's arguments to the contrary, the police explained to him several times that the prosecutor was the one who had the power to lessen the charges and recommend sentencing, and that the case stay in juvenile court. The officers also explained that the judge was the one who made the decision, but usually listened to the prosecutor. The officers never promised the case would stay in juvenile, but promised to talk to the prosecutor and inform him of appellant's cooperation. In fact, at the beginning of the second interview, appellant asked Detective Quinn how much time he would get. The detective stated there was a wide range of possibilities, all depending on whether appellant was charged as a juvenile or an adult. He again stated that he would go to the prosecutor and ask him to take appellant's cooperation into account. It is unfortunate that the results of the police recommendation to the prosecutors and ultimately, the judge, was not as expected. However, this does not evidence bad faith on the part of the police.
 {¶ 17} Appellant also argues that the trial court incorrectly determined that the connection between the police interrogation and appellant's confession was broken by his intervening conversation with his mother. The trial court found that appellant withstood questioning by the police and refused to admit any involvement until he was persuaded to do so by his mother. The trial court found the confession was the direct result of appellant's mother's admonitions, and not the result of coercive police activity.
 {¶ 18} Appellant argues that the police used Jackson as their agent in order to obtain a confession that they could not obtain themselves. Appellant contends because Jackson was a state actor, there was no break in the causal relationship between police action and the confession, and the statement was the result of coercive police activity.
 {¶ 19} The trial court found that, although questioned by two experienced detectives, appellant spent hours denying involvement in the robbery and making up explanations about his whereabouts. The trial court further found that in spite of everything the police said to him about the possibility of keeping the case in juvenile court if he cooperated or going to adult prison if he didn't cooperate, and in spite of the evidence the police stated they already had against him, appellant continued to deny involvement in the robbery.
 {¶ 20} The trial court found that "in the face of all of that, this sixteen year old was able to withstand that type of interrogation for four hours and would not have given a statement, would not have given a confession, but for the fact that he spent eight minutes on the phone with a mother who said to him, `look, you've gotta do what's best for you. These people got you into it. You've gotta take care of yourself. This is your only good chance to help yourself. You've gotta cooperate because you're facing some very serious consequences and I'm telling you to do this because it's in your best interest.' And only after his mother tells him that it's in his best interest to cooperate, does he finally give a statement to the police * * *."
 {¶ 21} Evidence of "coercive police activity" is necessary before finding that a confession was involuntarily given. State v. Cooey
(1989), 46 Ohio St.3d 20, 28. The Fifth Amendment is not concerned with moral and psychological pressures emanating from sources other than official coercion. State v. Dailey (1990), 53 Ohio St.3d 88, 92; In reGoins (1999), 137 Ohio App.3d 158, 163.
 {¶ 22} After viewing the videotapes, listening to the tape recordings of the telephone conversations and reading the testimony of the police officers, we find competent, credible evidence to support the trial court's findings of fact on this issue. The officers testified that they are required to call parents of juveniles who are arrested. Brillhart testified that he called to get background information for his paperwork and to inform Jackson of what had transpired. The recording of the conversation supports his testimony. During the conversation, Brillhart discussed the fact that the police had tried to get appellant to cooperate and that it would be in his best interest to do so, but appellant refused. Brillhart told Jackson that the officers would try to keep the case in juvenile court if appellant cooperated, but made no promises. He then stated that he'd let Jackson handle "that end of it" and "whatever she wanted to do was fine."
 {¶ 23} Jackson asked if Brillhart could get appellant on the phone right away. Brillhart initially said "no," and Jackson requested that appellant call her back. Brillhart then stated he might be able to get appellant on the phone to call her back. Jackson responded, "Call me back and I'll bet ya' within ten minutes when I get off that phone * * * you'll have what you want." The phone conversation shows no request on the part of the police to have Jackson act as their agent in obtaining a confession. Instead, the phone conversation shows the officer explaining the events that had occurred, appellant's refusal to cooperate, and the options available. While there is no mistaking the fact that police wanted appellant to confess, the decision to try and talk appellant into cooperating was made by Jackson at her own initiative.
 {¶ 24} The conversation between Jackson and appellant also supports the trial court's determination that the confession was the result of appellant's conversation with his mother, not police interrogation. During the police interview, appellant was calm and relaxed and spoke with the officers in a casual manner. On the phone with his mother, however, appellant spoke in a deferential manner, constantly addressing her as "ma'am" and readily agreeing with her statements. Jackson urged appellant to take responsibility for his actions, to cooperate, and to "grow up and accept your responsibilities." She chastised him that he "knew better," that he needed to help himself because the others were "telling on him" and that she, along with everyone else, knew he "did it."
 {¶ 25} Jackson then requested to speak with Sergeant Brillhart again. Once he was on the phone, she told him, "I'm sorry it took so long for him to cooperate with you. You know what, I'm not gonna tell you how to run your police department. (Inaudible) knuckle head kids like that. * * * Call the momma and daddy. And put their momma and their daddy on the phone and make `em talk to the momma and daddy." Her conversation with her son and her comments to Brillhart suggest that she knew how to get to her son to cooperate better than the police did and that it was her decision to try and obtain appellant's cooperation. We find no evidence that the police incited or coached Jackson to obtain a confession for them. See State v. Rowe (1990), 68 Ohio App.3d 595, 607. Finally, before the second interview, appellant agreed that the reason he was now talking to the police was because he talked to his mom and she told him to tell the truth.
 {¶ 26} Considering the totality of the circumstances, we find appellant's confession was voluntarily obtained. Although appellant was only sixteen years old and had no prior criminal experience, he was calm and able to intelligently speak with the police. He continued to deny any involvement in the robbery, even after being informed that the others had confessed and that his alibi witness had just informed police that he was asked by Johnson to provide an alibi for appellant. After being caught in lies and inconsistencies by the police, appellant was able to further fabricate a story that evolved as new facts were brought to light by the police.
 {¶ 27} Although the police told appellant things would go better if he cooperated and they would speak to the prosecutor one way or the other, there is no evidence of threats or promises that went beyond the bounds of permissible behavior. There is no evidence of physical deprivation or mistreatment and the videotape reveals that police even brought a soft drink for appellant at one point in the interview.
 {¶ 28} We agree with the trial court's finding that appellant's confession was the result of his conversation with his mother and not the result of any coercive police activity. We recognize that the facts of this case could possibly be interpreted as appellant urges on appeal. However, as mentioned above, the trial court is the finder of fact in a motion to suppress, and we must accept these findings if they are supported by competent, credible evidence. Because there is competent, credible evidence to support the trial court's decision that the confession was voluntarily obtained, appellant's first assignment of error is overruled.
 {¶ 29} In his second assignment of error, appellant contends that the trial court erred when imposing its sentence because it considered appellant's lack of remorse and did not take into account appellant's cooperation with the police. At the sentencing hearing, counsel for appellant informed the trial court that he had advised appellant not to provide a statement for the presentence investigation report because appellant would be appealing his conviction based on the motion to suppress. Appellant's counsel did not want any statements made by appellant to be used against him if the appeal was successful and the case remanded.
 {¶ 30} At the sentencing hearing, the trial court found statements in a psychologist's report insightful. The psychologist noted that, although appellant answered questions, he was defensive and trying to present a picture of himself as normal and without flaws and that because of his unwillingness to disclose personal thoughts and motivations, it was hard to get to know him, except superficially. The trial court stated that the same was true with appellant's conduct in court.
 {¶ 31} The trial court then looked at the facts before it, stating that appellant went out and found a gun at the direction of two adults and used it in a robbery, that he put on a ski mask, went into the establishment and terrorized two employees for ten to 15 minutes, taking the time to wait for a second safe to open. Then, at the direction of one of the adults, appellant hit the employees in the head to knock them out so they couldn't call the police, hitting them not once, but twice. The trial court stated that although appellant says they were light taps and he didn't want to hurt them, the employees described it as a pistol whipping and both required medical treatment at the hospital. The trial court then discussed the trauma to the victims and the emotional damage caused to one victim who is afraid to leave the house, grinds her teeth and has broken teeth as a result of emotional turmoil, and had to move away from the area. The court noted that this victim will require psychological counseling for a long time.
 {¶ 32} The court stated that appellant had no criminal record and there was no indication that he had previous contact with law enforcement. However, the trial court found it disturbing that appellant could be talked into getting a gun, going into a business, robbing people at gunpoint then injuring them significantly enough that they require being taken to the hospital. The court continued by stating, "And even to this day, regardless of counsel's advice, shows absolutely no understanding of how significant his acts were. No understanding of how * * * much impact he had on the victims that were involved in this case or how dangerous what he did was and how close he came to causing loss of life. Absolutely no acceptance of responsibility. He accepted it and then he unaccepted it. And he hasn't accepted responsibility. He's not remorseful and he's not contrite. And he, to this day * * * hasn't exemplified any indication that he feels totally responsible for what he did or is willing to do anything to indicate his sense of responsibility."
 {¶ 33} The court continued by stating, "So, I've got a sixteen year old who can be talked into pistol whipping victims, robbing them at gunpoint and is, at this point, still lacking remorse and contrition for the acts that occurred. Which indicates to this court that there is absolutely no reason to believe he couldn't and wouldn't do it again given a similar set of circumstances if it was that easy to talk him into it this time." The court continued by finding physical and emotional harm to the victims, that appellant's acts presented "a serious risk of death or serious physical harm" and that the acts occurred with use of a deadly weapon. The trial court then sentenced appellant to the required three years on the gun specification, four years on the aggravated robbery charge, three years on one felonious assault charge and two years on the other felonious assault charge, with all the sentences running consecutively.
 {¶ 34} Appellant argues that the trial court should not have considered his lack of remorse because he did not make statements on the advice of counsel out of concern that the statements could be used against him if the case were remanded. However, the trial court was statutorily required to consider whether "[t]he offender shows genuine remorse for the offense" in determining the likelihood of recidivism. R.C. 2929.12(D)5); R.C. 2929.12(E)(5). In choosing not to make a statement, appellant made a tactical decision and must be expected to accept the consequences of that decision.
 {¶ 35} Appellant also argues that the trial court did not consider his cooperation with police during sentencing. Contrary to appellant's assertion, there is evidence that the trial court did consider appellant's cooperation with the police, but did not find it a strong mitigating factor. Although the court was not required to consider appellant's cooperation and although not explicitly mentioned, the trial court stated it was aware of the facts of the case and appellant's statement to the police. However, the court stated that appellant accepted responsibility then "unaccepted" it. Although appellant cooperated with the police, the trial court's main concern at sentencing appears to be related to appellant's refusal to take responsibility for his actions and to be remorseful for the harm he caused. Because we find that the trial court properly considered the statutory sentencing factors, appellant's second assignment of error is overruled.
Judgment affirmed.
WALSH, P.J., concurs.
BROGAN, J., concurs in part and dissents in part.