[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] JUDGMENT ENTRY.
{¶ 1} This appeal is considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, and this Judgment Entry shall not be considered an Opinion of the Court pursuant to S.Ct.R.Rep.Op. 3(A).
{¶ 2} Defendant-appellant Leandre Jordan was convicted of one count of burglary in violation of R.C. 2911.12(A)(2), following a jury trial. The trial court sentenced Jordan to three years in prison. Jordan now appeals his conviction, raising four assignments of error.
{¶ 3} In his first and second assignments of error, Jordan challenges his conviction on both the sufficiency and the weight of the evidence. Jordan claims that the state's evidence merely demonstrated that he was present at the scene, and thus, that the state failed to show that he intended to aid and abet the commission of the burglary. We disagree.
{¶ 4} In viewing the evidence in the light most favorable to the prosecution, we hold that a rational trier of fact could have concluded that the state had proved beyond a reasonable doubt that Jordan had aided and abetted the burglary of Michael Holly's apartment.[1] During the trial, the prosecution presented evidence that a break-in had occurred at Holly's Hamilton Avenue apartment on the night of December 23, 2001. Another resident of the apartment building, Laverne Kimbrow, had discovered the break-in and began screaming that she was going to call the police. Kimbrow called the police and gave them a description of three young men. Officer Charles Gardner was dispatched to the area and given a description of the three suspects.
{¶ 5} When Officer Gardner arrived, he saw three young men who matched the suspects' descriptions walking in a parking lot. Officer Gardner pulled his police cruiser up behind the three young men and yelled for them to come over to the cruiser. Two of the young men then took off running. Officer Gardner chased one of the young men, Jordan, in his police cruiser and apprehended him. After Officer Gardner had read Jordan his Miranda rights and placed him under arrest, he asked Jordan what was going on. When Jordan replied that he was coming from the store, Officer Gardner asked Jordan to answer the question truthfully. Jordan then told Officer Gardner that he had been acting as a lookout for a young man named James who had broken into an apartment on Hamilton Avenue.
{¶ 6} Jordan was subsequently transported to the police station. He was placed in an interview room and questioned by Officer Steven Fox. Officer Fox handed Jordan a written notification-of-rights form. After Officer Fox had verbally explained Jordan's Miranda rights, Jordan signed the form and gave police a taped statement confessing his involvement in the burglary of Holly's apartment. In the taped statement, Jordan admitted to acting as a lookout for James while he broke into Holly's apartment. Jordan stated that he had watched James go up the fire escape into Holly's apartment and throw items out the window. When discovered by Kimbrow, Jordan admitted yelling a warning to James and then running from the scene. Jordan further admitted that he was to get either money or property from James for his work in assisting the burglary. Having reviewed the record, we conclude that the state presented sufficient evidence from which a trier of fact could have concluded that Jordan had intended to aid and abet James in the burglary of Holly's apartment. Consequently, we overrule the first assignment of error.
{¶ 7} We also reject Jordan's contention that his conviction was against the weight of the evidence. A jury is free to believe all, part, or none of any witness's testimony.[2] Here the jury chose to believe the testimony of the state's witnesses and Jordan's own taped statement, instead of Jordan's trial testimony denying his involvement in the crime. Thus, after reviewing the entire record, we cannot conclude that the jury lost its way and created such a manifest miscarriage of justice that we must reverse Jordan's conviction and order a new trial.[3]
Accordingly, we overrule Jordan's second assignment of error.
{¶ 8} In the third assignment of error, Jordan argues the trial court erred in excluding an African-American juror from the panel by a preemptory challenge, in violation of Batson v. Kentucky.[4] We disagree.
{¶ 9} In order to proceed on a Batson challenge, an accused must first make a prima facie case by showing that the person challenged is a member of a recognized racial group; this raises an inference that the challenge has been used to exclude the juror because of race. Once this is established, as it was in this case, the burden then shifts to the state to provide the trial court with a race-neutral reason for the use of the preemptory challenge. After hearing the defendant's response to the prosecutor's explanation, the trial court must then decide whether the prosecutor's reasons are pretextual and whether the defendant has carried his burden of proving purposeful discrimination.[5] This court must affirm a trial court's finding of a race-neutral reason to support the challenge unless that finding is clearly erroneous.[6]
{¶ 10} In this case, there were two African-Americans in the venire. The state only challenged one of those African- American jurors. When defense counsel objected to the challenge, the assistant prosecuting attorney explained that he was challenging the prospective juror because she was a Cincinnati public school teacher and a member of the teachers' union. The assistant prosecuting attorney stated that in his experience members of that union tended to be very liberal. The trial court found this reason to be race-neutral and overruled the Batson challenge. Because we cannot say the trial court's finding that Jordan had failed to prove purposeful racial discrimination was clearly erroneous, we overrule the third assignment of error.
{¶ 11} In the fourth assignment of error, Jordan argues that the court erred in overruling his motion to suppress the taped statements he had made to the police after his arrest. Jordan claims that his confession was not knowing, intelligent, or voluntary because he was only eighteen years of age at the time he was interrogated, and because the police had promised him more lenient treatment in the form of a recognizance bond and a reduced charge of criminal trespassing if he confessed his involvement in the burglary.[7]
{¶ 12} Miranda v. Arizona mandates that all individuals who are taken into police custody must be advised of certain constitutional rights.[8] Those rights can be waived prior to interrogation, provided that the waiver is voluntary, intelligent, and knowing.[9] Even if an accused knowingly and intelligently waived his right to counsel, the state must still demonstrate that the confession was voluntary by a preponderance of the evidence.[10]
{¶ 13} To determine if a confession was involuntarily induced, a court must look at the totality of the circumstances surrounding the confession. This includes the accused's age, mentality, and prior criminal experience; the length, intensity, and frequency of the interrogation; any deprivation or mistreatment of the accused; and the investigators' threats or inducements.[11] Promises that an accused's cooperation will be considered in the disposition of the case, or that a confession will be helpful, do not invalidate an otherwise legal confession.[12] To invalidate the confession, there must be evidence of police coercion or overreaching such that the accused's will was overborne.[13]
{¶ 14} The record demonstrates that police officers advised Jordan of his Miranda rights two times prior to his confession: once after his arrest and once prior to his taped confession. Jordan acknowledged that he was read the "notification of rights" form and that he signed the form. Thus, the evidence supported the trial court's finding that Jordan was properly advised of his Miranda rights and that he had intelligently and knowingly waived those rights prior to admitting his involvement in the burglary.
{¶ 15} We also reject Jordan's argument that his confession was involuntary because police officers promised him a recognizance bond and a lesser charge if he would confess. During the hearing on Jordan's motion to suppress, the state presented testimony from both Officer Gardner and Officer Fox. Both officers denied making any promises to Jordan to entice him to confess. Thus, the only evidence of Jordan's claim was his own testimony. The trial court, as the trier of fact, found the police officers to be more credible and thus found the confession to have been voluntarily given.[14] Having reviewed the record, we cannot conclude that the trial court erred in finding that the police did not obtain Jordan's confession by any direct or implied promises.[15] As a result, we overrule the fourth assignment of error and affirm the judgment of the trial court.
{¶ 16} Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Sundermann, P.J., Doan and Winkler, JJ.
[1] See State v. Waddy (1992), 63 Ohio St.3d 424, 588 N.E.2d 819.
[2] See State v. Antill (1964), 176 Ohio St. 61, 197 N.E.2d 548.
[3] See Tibbs v. Florida (1982), 457 U.S. 31, 102 S.Ct. 2211; State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541.
[4] Batson v. Kentucky (1986), 476 U.S. 79, 96-98,106 S.Ct. 1712.
[5] Id.
[6] State v. Hill (1995), 73 Ohio St.3d 433, 653 N.E.2d 271.
[7] State v. Edwards (1976), 49 Ohio St.2d 31, 358 N.E.2d 1051, vacated on other grounds (1978), 438 U.S. 911, 98 S.Ct. 3147.
[8] (1966), 384 U.S. 436, 86 S.Ct. 1602.
[9] Id. at 444.
[10] See State v. Edwards, supra.
[11] See State v. Edwards, supra, at paragraph two of the syllabus.
[12] See State v. Loza, 71 Ohio St.3d 61, 1994-Ohio-410,641 N.E.2d 1082.
[13] Colorado v. Connelly (1986), 479 U.S. 157, 167,107 S.Ct. 515.
[14] See State v. Fanning (1982), 1 Ohio St.3d 19, 20, 437 N.E.2d 583
(matters as to the credibility of witnesses at a suppression hearing are for the trier of fact to decide).
[15] See State v. Otte, 74 Ohio St.3d 555, 562, 1996-Ohio-108,660 N.E.2d 711; State v. Wilson (1996), 117 Ohio App.3d 290, 294,690 N.E.2d 574; State v. Arrington (1984), 14 Ohio App.3d 111, 114,470 N.E.2d 211.